In the Matter of the Arbitration between MAX OLTARSH and
Others, Copartners, Doing Business under the Firm Name and
Style of J. OLTARSH, Petitioners, Appellants, and CLASSIC DRESSES,
INC., Respondent.

First Department, December 2, 1938.

*Maurice Danson*, for the appellants.

*David Jacobs* of counsel [*Marcy Finkelstein* with him on the brief; *Finkelstein & Jacobs*, attorneys], for the respondent.

*Robert R. Bruce* of counsel [*McLanahan, Merritt & Ingraham*, attorneys], as *amicus curiæ.*

COHN, J. Respondent, Classic Dresses, Inc., is a manufacturer of dresses. Appellants, four in number, are partners engaged in the business of selling textiles under the name of J. Oltarsh. In 1936 the parties entered into four separate agreements for the purchase and sale of certain silk materials. Each of these contracts contained the following clause: " All controversies arising out of or relating to the contract or any modification thereof, shall be settled by arbitration in accordance with the Arbitration Rules of the Silk Association of America, Inc., or its successors."

A controversy between the parties arose. After the Supreme Court had ordered arbitration following a motion by appellants which sought that relief, the parties proceeded to arbitrate in accordance with the arbitration rules of the National Federation of Textiles, Inc., successor to the Silk Association of America, Inc. For convenience we shall refer to the National Federation of Textiles, Inc., as the association.

The plan of arbitration established by the arbitration rules of the association provides for a committee on arbitration (hereafter referred to as the committee) which acts as a governing body to administer, and, when necessary, to interpret the rules. Hearings in this case began before three duly selected arbitrators on March 31, 1937, and were completed on April 27, 1937. Before any award was formally rendered, appellants, on April 30, 1937, complained to the committee concerning the alleged partiality of the arbitrator designated by respondent and requested that a new board be chosen. The committee conducted an investigation in the course of which the minutes of the proceedings before the arbitrators were examined and the association's administrative assistant, who was present at all of the hearings, was interviewed. This resulted in a finding that the conduct of this arbitrator showed

definite prejudice and bias. Accordingly, the committee ruled that all three arbitrators be disqualified and directed the parties to constitute another board. Respondent refused to participate in the designation of the new group. The second board, consisting of three new members, was nevertheless appointed. Respondent took no part in the proceedings before that body, which on July 13, 1937, submitted an award in writing in favor of appellants directing respondent to pay the sum of $2,096.04 and ordering it to deliver to appellants twenty-eight pieces of specifically identified merchandise.

Thereafter, and despite its removal by the committee, the first board made a formal written award on July 28, 1937, signed by two of its members, favoring respondent and directing appellants to pay respondent the sum of $1,030 damages, and to deliver twenty-four pieces of merchandise to be selected by respondent and paid for under the terms contained in the contracts. The Special Term confirmed that award by order finally resettled on November 1, 1937. It denied the application of appellants to confirm the award of the second board of arbitrators.

In our opinion, the award made by the first board of arbitrators, which was in respondent's favor, should not have been confirmed, for the reason that one arbitrator who was properly disqualified took part in making the award. We also believe that the award of the second board was invalid. Though the rules of the association gave its committee full power to disqualify any arbitrator for partiality and interest, they did not warrant the removal of a board of three for the misconduct of only one. The committee was without authority under its own rules to resubmit the dispute to a wholly new board when two of the original arbitrators were not properly disqualified.

In arbitrating their differences, the parties were bound by the rules of the association because their contracts so provided. The courts have uniformly upheld provisions in a contract requiring arbitration to be conducted under rules of a specified trade association. This includes procedure for the appointment and removal of arbitrators. (*Finsilver, Still & Moss* v. *Goldberg, M. & Co.,* 253 N. Y. 382, 386; *Matter of Tutein* v. *Hudson Valley C. & P. Corp.,* 249 id. 84; *Matter of Meinig Co.* v. *Katakura & Co., Ltd.,* 241 App. Div. 406; affd., 266 N. Y. 418; *Gilbert* v. *Burnstine,* 255 id. 348; *Matter of Bullard* v. *Grace Co.,* 240 id. 388.) However, where there is a failure to comply with the rules upon any substantial or material question, the award of arbitrators becomes invalid.

Rule 7 of the arbitration rules of the association provides as follows:

## " Successor Arbitrators.

" If an arbitrator shall not file a written acceptance of appointment with the Bureau within seven days after notice thereof has been mailed to him, *or if the Committee shall determine that an arbitrator is not impartial and disinterested,* or if an arbitrator shall resign or otherwise fail or cease to act, then the Committee may declare a vacancy to exist. A successor arbitrator shall be appointed in the manner set forth in these Rules for the appointment of the predecessor arbitrator, unless the Committee in its absolute discretion decides to appoint the successor arbitrator." (Italics ours.)

Rule 27 reads:

## " Interpretation of Rules.

" The Committee shall have exclusive power to construe these Rules and its interpretation shall be conclusive."

By virtue of these rules, the committee was empowered to determine that an arbitrator selected was not impartial and disinterested and it then had a right to declare a vacancy to exist; it was also given exclusive power to interpret the rules. Reasonably construed and applied, we see in these rules no conflict with the laws of the State of New York governing arbitrations. The parties had a right, by contract, to authorize the committee of the association, not only to decide whether or not the designated arbitrators were disinterested and unbiased, but also to construe the rules of the association. Where the interpretation of its rules by the committee is not arbitrary, there should be no judicial interference.

True, the language of rule 7 might well have been clearly phrased. For example, it would have been more desirable if the regulation had stated in so many words that the removal of an arbitrator might be exercised at any time before the rendition of an award. Nevertheless, we believe that the committee's interpretation, that the authority to disqualify for specified cause existed up to the time of the formal making and delivery of an award, was not an unreasonable one.

Here, however, the committee, upon completing its investigation which showed bias and prejudice by only one arbitrator, determined, without evidence to support it, that all three were not impartial and declared three vacancies to exist. This, we think, was unwarranted by the rules. It is suggested that, though the committee had no substantial evidence to justify the individual disqualification of the other two members of the board, it would have been unjust to direct a single new arbitrator to be appointed to sit with the other two who had theretofore heard all the evidence and had sat through the hostile demonstrations at four hearings

with the biased arbitrator. The fair and sensible procedure, it is argued, required that an entire new board be designated. While it may have been convenient and expedient in the circumstances disclosed for the committee to remove all three, though only one was shown to be unqualified, no such right was accorded to the committee.

When, on May 5, 1937, the arbitrator appointed by respondent was disqualified by the committee, his authority as arbitrator had terminated. He became *functus officio* and he was without further power. The award of the first board made on July 28, 1937, in which he unlawfully participated, was, therefore, a nullity and must be set aside.

The award made by the second board was also invalid for the reason that the committee erroneously disqualified two members of the first board and without authority under its rules, designated a second board of newly-chosen members. The second board of arbitrators was improperly convened and no validity may attach to its award.

The propriety of a resubmission of controversies to the same arbitrators or to new arbitrators in the event of a vacatur of an award rests in the sound discretion of the court. (*Matter of Murray Oil Products Co., Inc., and Eagle Paint & Varnish Works, Inc.*, 243 App. Div. 548; Civ. Prac. Act, § 1462, as amd. by Laws of 1937, chap. 341.) Section 1462 of the Civil Practice Act, so far as pertinent, provides as follows: " Where an award is vacated, the court, in its discretion, may direct a rehearing either before the same arbitrators or before new arbitrators to be chosen in the manner provided in the submission or contract for the selection of the original arbitrators and any provision limiting the time in which the arbitrators may make a decision shall be deemed applicable to the new arbitration and to commence from the date of the court's order."

In this case the interests of justice require that a rehearing of the controversies between the parties should be held before a board of three new arbitrators to be chosen in the manner provided by the rules of the association.

In view of this disposition it is unnecessary to consider the claim of appellants that the award of the first board of arbitrators was indefinite, improper and lacked finality. The board to which this entire matter is to be resubmitted will arbitrate " all controversies arising out of the contracts between the parties hereto," as provided by an order made January 25, 1937.

The judgment, and the order made and entered November 1, 1937, confirming the award of the board of arbitrators and directing

the entry of the judgment, together with the order granting reargument and adhering to the original determination should be reversed. The order denying appellants' motion to confirm the award of the arbitrators rendered in their favor and the order denying appellants' motion to modify and correct the award upon which the judgment was entered should be affirmed. The judgment should be vacated and respondent's motion to confirm the award dated July 28, 1937, in its favor denied. The matter is remitted for further proceedings to new arbitrators to be chosen in a manner provided by the rules of the association and in accordance with section 1462 of the Civil Practice Act.

MARTIN, P. J., TOWNLEY, UNTERMYER and CALLAHAN, JJ., concur.

Judgment, and the order entered November 1, 1937, confirming the award of the board of arbitrators and directing the entry of the judgment, together with the order granting reargument and adhering to the original determination, unanimously reversed, with costs. Order denying appellants' motion to confirm the award of the arbitrators rendered in their favor and the order denying appellants' motion to modify and correct the award upon which the judgment was entered unanimously affirmed. Judgment vacated and respondent's motion to confirm the award dated July 28, 1937, in its favor, denied, and the matter remitted for further proceedings to new arbitrators to be chosen in a manner provided by the rules of the association and in accordance with section 1462 of the Civil Practice Act. Settle order on notice.